UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN JUNIOR GORDON,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:18-cv-158

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants for failure to state a claim.

## **Discussion**

### I.     **Factual allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon

County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, together with the following LRF officials: Warden (unknown) Harry; Sergeant (unknown) O'Neal; Assistant Resident Unit Manager (unknown) Lane; Case Manager (unknown) Duiker; Correctional Officer (unknown) Dorch; Prison Counselor/Sergeant (unknown) Ross; and Medical Supervisor Jill Britten.

Plaintiff's complaint is not a model of clarity. However, from the complaint and the attachments, it appears that Plaintiff was assaulted by his cellmate, prisoner (unknown) Clay, on July 7, 2017. Prisoner Clay apparently stabbed Plaintiff just above the eyebrow with a pen. Officer Flynn (not a Defendant) came to the cell and found Clay on his top bunk with his arm outstretched in a fist, facing Plaintiff. Plaintiff stated, "He stabbed me with a pen." (Misconduct Report, Attach. to Compl., ECF No. 1-1, PageID.10.) Officer Flynn saw Clay throw something at the trash can and later recovered a clear plastic pen from the trash can. Both prisoners were taken to segregation. Plaintiff was taken for medical treatment to the emergency room. According to an emergency room report attached to the complaint, Plaintiff received six sutures to close the wound. (Emergency Report, Attach. to Compl., ECF No. 1-1, PageID.15.)

Officer Flynn initially charged Plaintiff with a Class I misconduct for fighting and possessing a weapon. The misconduct report indicated that Flynn had observed a lock lying on Plaintiff's bed after Plaintiff had been removed from the room. (Misconduct Report, Attach. to Compl., ECF No. 1-1, PageID.10.) The hearings officer concluded that, notwithstanding Clay's claim that Plaintiff had swung his lock at Clay before the stabbing, Plaintiff was not guilty of either charge. (*Id.*)

Plaintiff alleges that, three weeks before the incident, he advised Defendant Dorch that he did not want to become involved in an altercation with his cell-mate, and he asked Dorch

2

to move him to another cell. Defendant Dorch told Plaintiff to write a grievance about the issue. (Compl., ECF No. 1, PageID.4.) Plaintiff also told Defendant Duiker about his "fears of getting into it with inmate Clay and she basically told [him] to deal with it." (*Id.*) On June 19, 2017, Plaintiff spoke to Defendant Ross about his problem with his cellmate, saying, "Clay and I are about to have it out with each other." (*Id.*, PageID.5.) Defendant Ross asked Plaintiff to tell him exactly what was going on. Plaintiff told Ross, "Mr[.] Clay has a mental problem because he wakes up out of his sleep and hits the wall with a closed fist almost every other night." (*Id.*) Plaintiff alleges that Ross was aware that prisoner Clay had had his security classification level raised from a level I to a level II following a prior physical altercation. Based on Plaintiff's description of the problem with his cellmate, Defendant Ross "[a]pparently . . . didn't find it a problem" and failed to move Plaintiff to a different cell. (*Id.*)

Plaintiff's allegations against the remaining Defendants all involve actions that occurred after the attack. He alleges that Defendant Heidi Washington has not responded to the materials he sent her, including a copy of the misconduct report and of his grievances against Defendants Dorch, Duiker, and Lane. Plaintiff alleges that Defendant Warden Harry also has not responded to the materials he sent, including grievances or grievance appeals.

In addition, Plaintiff complains that Defendant O'Neal fabricated information to the effect that Plaintiff had signed a protection waiver on June 22, 2017. He suggests that O'Neal made this fabrication in relation to a response to Plaintiff's grievance about Defendant Dorch. He also alleges that Defendant Lang attempted to intimidate him and to discourage him from pursuing his grievances against Defendants Duiker and Dorch.

Finally, Plaintiff complains that Defendant Jill Britten is a supervisor in the medical unit, but her staff failed to write up a critical incident report as required by prison policy, which

affected whether the Michigan State Police prosecuted Clay for the assault. In addition, he alleges that Defendant Britten's medical staff "failed to respond on several occasions on [Plaintiff's] request to remove stitches from the wound." (*Id.*)

For relief, Plaintiff seeks compensatory and punitive damages.

## II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

4

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability – Defendants Washington, Harry & Britten

Plaintiff's only allegations against Defendants Washington and Harry are that they did not respond to his grievances or other complaints or did not properly supervise their employees. Plaintiff also alleges that Defendant Britten failed to ensure that her subordinates properly wrote a critical incident report and failed to respond to his requests to remove his stitches.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington, Harry, and Britten engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## B. Grievance Response – Defendants O'Neal & Lane

Plaintiff alleges that Defendant O'Neal made a false statement with respect to a grievance response, by indicating that Plaintiff waived protective custody on July 27, 2017. Plaintiff does not indicate the constitutional basis for his claim, but he arguably suggests that O'Neal's statement either denied him due process or interfered with his right to petition the government for redress of grievances. Similarly, he appears to allege that Defendant Lane did not provide him a fair grievance process.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant O'Neal did not deprive him of due process by making an inaccurate statement when responding to the grievance, and Defendant Lane did not deprive him of due process in the handling of the grievance.

Moreover, neither Defendant O'Neal's inaccurate statement about the grievance nor Defendant Lane's unsatisfying response to the grievance barred Plaintiff from petitioning the government to remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Further, even if Plaintiff was improperly prevented from obtaining relief in the grievance process, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by an unsuccessful grievance procedure, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a claim against Defendants O'Neal and Lane arising out of the grievance process.

### C. Retaliation – Defendant Lane

Plaintiff alleges that Defendant Lane retaliated against him for filing a grievance by "follow[ing] orders from her superiors to intimi[d]ate and discourage [Plaintiff] from p[u]rsuing grievances that was [sic] written on both Case Manager Duiker and C/O Dor[s]ch." (Compl., ECF No. 1, PageID.4.) In support of his claim, Plaintiff attaches Defendant Lang's Step-I response to Plaintiff's grievance against Defendants Dorch and Duiker. (Attach. to Compl., ECF No. 1-1, Page.ID.18.) Plaintiff appears to allege that Defendant Lane retaliated against him for filing a grievance against Defendants Duiker and Dorch.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff therefore demonstrates the first element of his retaliation claim.

Plaintiff's claim, however, fails at the next step. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus-X*, 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625). Here, Plaintiff claims only that Defendant Lane "intimidated" him and "discouraged" him from pursuing his grievance. (Compl., ECF No. 1, PageID.4.) Such an allegation is wholly conclusory and, at best, demonstrates minor harassment. Such a "[t]hreadbare recital[] of [an] element[] of a cause of action" falls short of demonstrating that Plaintiff suffered a constitutionally significant injury. *Iqbal*, 556 U.S. at 678; *Thaddeus-X*, 175 F.3d at 398. Plaintiff therefore fails to state a retaliation claim against Defendant Lane.

**D. Eighth Amendment – Defendants Duiker, Dorch & Ross**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that someone would cause the prisoner serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Plaintiff fails to allege facts supporting either element of the deliberate-indifference standard. Plaintiff's allegations about what he told Defendants Dorch, Duiker, and Ross are limited to general complaints about his cellmate. Plaintiff alleges that he told Defendant Dorch

10

three weeks before the incident that he "didn[']t want to catch another case." (Compl., ECF No. 1, PageID.4.) Similarly, he told Defendant Duiker that he was afraid that he was going to "get[] into it" with his cellmate. (*Id.*) Finally, he told Defendant Ross that he had an issue with his cellmate. When Ross inquired about specifics, Plaintiff complained only that his cellmate had a mental problem and woke out of his sleep to hit the wall on many days. (*Id.*, PageID.5.) Plaintiff's allegations indicate no more than that Plaintiff had disagreements or dissatisfactions with his cellmate that caused him to believe that he might get into an argument with his cellmate. Nothing about Plaintiff's allegations evidences that Plaintiff reasonably feared a physical attack by his cellmate. *Thompson*, 29 F.3d 242-43. In addition, Plaintiff's allegations utterly fail to show that he conveyed such a fear to Defendants Duiker, Dorch, or Ross or that they were subjectively aware that he faced a substantial risk of harm. Plaintiff therefore fails to state an Eighth Amendment claim against Defendants Duiker, Dorch and Ross.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) for failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    March 26, 2018              /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE